## Walker *et al., v.* Walker.

Plaintiff laid his damages at thirteen thousand dollars in his writ, and at fourteen thousand in his declaration, for which variance the defendant pleaded in abatement. The plaintiff demurred to the plea, and pending the demurrer, obtained leave to amend by making the damages laid in the writ and declaration correspond, whereupon the demurrer was overruled, and judgment of *quod recuperet.* Held, the judgment was erroneous, and should have been *respondeat ouster.*

Under our practice, the writ is a part of the record.

A plea cannot be treated as a nullity, after it has been made the subject of a demurrer.

IN ERROR from the circuit court of the county of Madison.

Jeremiah Walker brought his action of assumpsit against John H. Walker and others. In the declaration, the damages were laid at fourteen thousand dollars; in the writ at thirteen thousand dollars. The defendant pleaded the variance in abatement, to which the plaintiff demurred, and before any decision on the demurrer, obtained leave to amend, by making the damages in the declaration and the writ correspond. The court then overruled the demurrer, and gave judgment of *quod recuperet.*

The errors assigned are:

1. The judgment should have been *respondeat ouster.*

2. It was error to give leave to amend the writ, before decision on the demurrer.

Miles, for plaintiff in error.

Our statute—see Howard & Hutchison's Digest—expressly provides, that if the demurrer of plaintiff is sustained to the plea of defendant, the judgment of the court shall be *respondeat ouster.* See also Rev. Code, 120.

This court has repeatedly decided the identical question presented by the record. See Walker's Rep. 230; Ib. 325; 2 How. 681; 3 How. 415; 5 How. 387.

Walker *et al. v.* Walker.

It is insisted by plaintiffs in error, that the permission given to plaintiff in the court below to amend his writ *before* the plea in abatement and demurrer thereto was disposed of, was wholly unwarranted, and finds no sanction in any principle of law or practice. And it is believed to be of itself sufficient error to reverse the judgment.

It was insisted in argument by defendant's counsel, that the plea in abatement was a nullity, might have been treated as such, and that the court below was authorized to give judgment of *quod recuperit*, on sustaining the demurrer. Admitting, for argument, that the plea was a nullity; yet defendants are estopped from so regarding it now, because they demurred to it, thereby waiving any objection of the kind. It is too late to raise that question here, after treating it in the court below as a plea properly pleaded, and demurring to it for matter of law, *not specially for matter of form*.

But it is strenuously contended that the plea was not a nullity. And although we are willing to accord to defendant's counsel all due credit for his elaborate argument, and refined and subtle distinctions on the science of special pleading, we think they savour more of the speculations of the legal antiquarian, than of reasons and logical deductions applicable to the principles involved in this case.

It is said no variance between the capias and declaration can be plead in abatement; and it is insisted that a variance between the declaration and *original writ* is alone pleadable. This reasoning might be esteemed sound in the English courts, but here it vanishes, and descends into the merest sophistry.

In this state the capias performs the offices of both the *original writ* and *first process* in England. They are both merged in the capias here. By our practice, no *original writ issues*. By what species of logic, then, can it be proved, that the defendant in this state may not plead in abatement a variance between the *capias and declaration*, in the same manner as a defendant in the English courts may plead a variance between the *original writ and declaration?*

This question seems to us to be fully settled by the following authorities: See Com. Digest, title Pleader, p. 2; Wilson, 85; 2

Salkeld's Rep. 658; 2 Washington's Rep. 203; 2 Wheat. 45; 1 How. 574.

Under the doctrine contended for, a plaintiff may file his declaration in *ejectment*, and issue his capias in *slander* or *assumpsit*, and the defendant would not be permitted to plead the variance. No one will say this may be done. And yet it is the *principle* contended for. *One* kind of variance is as material as *another*, and if the defendant be not permitted to plead a variance of one sort, he cannot plead any other kind.

Mayes for defendants.

By the common law, if a demurrer is sustained to a plea in abatement, the judgment is *respondeat ouster;* and in this state it is the judgment to be given, in the first instance, in all cases where a demurrer to a plea is sustained, whether the plea be in bar or abatement. It is admitted, therefore, that, in general, it is error, for which this court should reverse, if, upon sustaining a demurrer to a plea, the judgment is *quod recuperit.* Cases, however, may arise, through the inadvertence of counsel or the court, in which it would be manifestly proper to enter a judgment that the *plaintiff* recover, upon sustaining the demurrer to a plea. To state an obvious case: If the defendant plead in bar a variance between the plaintiff's capias and his subpœna for witnesses, such plea is so manifestly frivolous, that the court would, on application, render judgment per *nihil dicet,* as for want of a plea. If, then, the plaintiff's attorney, through ignorance or inadvertence, demur, and an issue in law is joined, the court will, in deciding the demurrer, retrospect the record, and enter such judgment, either for plaintiff or defendant, according to the legal right, as it may, on the whole, appear. Stephen on Pleading, ed. of 1841, pp. 120, 144, 145. To this rule there are but two exceptions. 1. If plaintiff demur to a plea in abatement, and the decision is against the plea, the judgment is *respondeat ouster,* without regard to any defect in the declaration. 2. Though on the whole record the right be with the plaintiff, the court will not adjudge in favor of such right, unless the plaintiff have himself put his action on that right. To all who have attended to the science of pleading, the reason for each exception is too apparent to justify its statement.

Walker *et al. v.* Walker.

In the case supposed, when the court retrospects the record, it finds the plea wholly frivolous, the legal right of the plaintiff in such case is a judgment *quod recuperit* as per *nihil dicet*, and the court should render such judgment without regard to any step taken on the frivolous plea. It was nothing, and of it nothing can come.

, If this be true of one frivolous plea, it must be true of all, otherwise law is no science, but consists of arbitrary distinctions, reducible to no principles, but depending wholly on precedents, in which case, when there is no precedent, there will be no law. ,

The plea in this case was wholly frivolous. I am not ignorant that in the supreme courts of several states, pleas in abatement have been sustained on the ground of variance between the *capias* and declaration. In no one of these cases are the principles of pleading adverted to, and they are all the consequence of omitting to distinguish between *original writs* and *writs of process*. The plea in abatement (known to the common law) for a variance between the writ and declaration, is a plea of a variance between the *original writ*, *breve originale*, and the declaration. No such plea as that of a variance between a *writ of process* and the declaration is to be found, and it would be against all science to allow it. *Appearance* comes before pleading, and the only office of the *writs of process* being to produce the *appearance*, when the party has appeared the process is *functus officio*. But it was the office of the *original writs* to give authority to the party to institute, and the court to proceed in his suit. In Gilbert's history of the common pleas, page 2, it is said, "This court's authority is founded on original writs issuing out of *chancery*, which are the King's mandates for them to proceed to determine such and such causes; for it was a maxim among the Normans that there should be no proceedings in the King's court in *common pleas*, without the King's writ; therefore a writ always issued to warrant this court's proceeding," &c. In the edition of Stephen on Pleading, before referred to, it is said, "The *original writ* (breve originale) is a mandatory letter issuing out of the court of chancery under the great seal and in the King's name, directed to the sheriff of the county where the injury is alleged to have been committed, containing a summary statement of the cause of complaint, and re-

quiring him to command the defendant to satisfy the claim, and on his failure to comply, then to summon him to appear in one of the superior courts of common law, there to account for his non-compliance. In this edition the subject of original writs is slightly adverted to, because it was rendered unnecessary to treat of them at the time the edition was prepared, the use of original writs having been abolished by 2 William IV, ch. 39. In the 1st Am. ed. p. 6, which was written before the statute of 2d William IV, and when the common law alone governed, it was necessary to explain the nature and office of the original writ, to communicate a correct understanding of the law of actions and variance; therefore the subject is there fully treated of, and we are told that "one object of the original writ, therefore, was *to compel the appearance* of the defendant in court; but it was also necessary, as *authority for the institution of the suit;* for it was a principle (subject only to the exception introduced by the practice of proceeding by *bill*) that no action can be maintained in any superior court without the sanction of the King's original writ; the effect of which was to give cognizance of the cause to the court in which it directed the defendant to appear." See note 3 to edition of 1841, p. 6, *non potest quis sine breve agere,* Bract. 413; see also 3 Black. Com. 273. The declaration was nothing more than an amplification of the cause of action stated in the *original writ.*

Hence we discover the reason why a defendant might plead in abatement a variance between the original writ and the declaration. The original writ was necessary as authority to the plaintiff to institute, and the court to proceed to hear the specific case therein set forth. If there was a variance between the declaration and the original, the action should abate, because the cause of complaint set forth in the declaration was not a cause of complaint for which the plaintiff had obtained the royal sanction to sue, and in it the court had no authority to proceed, and hence it was that where the proceeding was by bill and not by original we see no such thing as a plea in abatement for a variance, although the capias ad respondendum was the appropriate writ of process in each case. Under the reformed practice introduced in England by 2 Wm. IV. c. 39, the capias is retained as the writ of process, and yet Stephen, in the edition before referred to, after treating of

dilatory pleas at some length, proceeds to say at page 50, "such is, in its principle, the doctrine of pleas in abatement; but the actual power of using these pleas has been much abridged, and the whole law relating to them consequently rendered of less prominent importance than formerly, by the effect of modern alterations. Of these the principal are as follows: First. A large proportion of these pleas was in former times founded on objections applying to the frame of the original writ exclusively of the declaration. By the recent statute 2 Wm. IV. c. 39, (abolishing the original writ in personal actions,) this species of plea is in personal actions of course absolutely extinguished; and in actions of every kind it had long been practically abrogated by certain rules of court in the reigns of George II. and George III. providing that oyer should no longer be granted of the original writ," &c.   Original writs never having been used here, but it being the right of the plaintiff to institute his suit, and the court having authority to proceed in it without any special warrant or authority, the effect on the plea of variance is precisely that produced in England by the late reform. The decisions before admitted to have been made on this subject are an impediment in my way.   It is however hoped that if on reviewing them it is found that they were hastily pronounced, there will be no hesitancy in returning to sound principles.   If we cannot do so, the consequence is, that jurisprudence, whilst all other sciences advance towards perfection, is not only doomed to stand still, but must constantly have a retrograde movement; for the most learned judges must occasionally err, and if they cannot go back to principle, as new errors from time to time must unavoidably creep in, the departure from sound principles and correct judicial action must be wider and wider.

It is said by the counsel for plaintiffs in error that the *capias* with us answers to the *original* in England.   If this were so, it is obvious that the court could not proceed to judgment where the defendant appears without a capias first sued out, for the suing out the capias would be necessary as authority to the court to proceed. Besides, the same observation would as well now apply in England as with us, and yet we have seen that the effect of abolishing the *original,* (not the *capias,* for that is retained,) in personal actions is to annihilate as to them the plea in abatement founded

Walker *et al. v.* Walker.

on variance, and indeed ever since the proceeding by *bill* came into use, it would have been as sound a reason there for a plea of variance between the writ of *process there* and the declaration as here, and yet there was no such plea, as that of the variance between the capias and declaration. It is also denied by plaintiff in error that the capias constitutes any part of the record. If this were so, what follows? clearly that the plea was frivolous, and tendered an issue that could not be decided, for as the court can only judicially know such facts as appear upon the face of the record, they could never know whether the variance did or did not exist, unless it appeared from the record. Hence to plead a variance between the original writ and declaration, it was necessary to crave oyer of the former, which issuing out of chancery, constituted no part of the record at law, until so made by oyer craved and granted; and hence the effect of the rules of common pleas and king's bench refusing to grant oyer was virtually a destruction of the plea. Now here no oyer was craved of the capias, and, (if it be true as contended for that the capias is no part of the record,) the plea without oyer presents nothing upon which the court can adjudicate, for its truth or falsehood is to be decided by inspection, and the court cannot inspect the capias if not a part of the record.

It is therefore contended that the paper purporting to be a plea was a mere nullity, and that although demurred to, the court rightfully in pronouncing judgment, gave the same which should have been pronounced in the first instance, that is, *quod recuperit*, and that the defendant never can by pleading a frivolous plea, to which plaintiff need not demur, entitle himself to a judgment of *respondeat ouster*, because the plaintiff's attorney by inadvertence demurs instead of asking judgment by *nihil dicet* as for want of a plea. This is accordant with the doctrine as to judgments as found in Stephen, p. 120, where it is said, "that the judges are, in contemplation of law, bound, before in any case they give judgment, *to examine the whole record;* and then to adjudge either for the plaintiff or defendant according to the legal right, as it may on the whole appear, notwithstanding, or *without regard to the issue in law, or fact, that may have been raised and decided between the parties; and this, because the pleader may from misapprehension have passed by a material question of law,*" &c.

Walker *et al. v.* Walker.

Upon the second assignment of error I will not trouble the court with any remark.

Wilkinson in reply.

It is assumed by the counsel of the defendants in error, "that inasmuch as this is a plea heretofore unknown, that it is a thing utterly void in law, and that the judgment of the court upon it was proper." It appears to us that this is not defensible as a proposition of law. Admit for argument's sake that the plea was a nullity, and that the court, upon the application of counsel would have treated it as such and signed judgment; yet as in point of fact it was *otherwise* treated by the counsel, and demurred to, it was too late for the court *then* to do what it was not asked to do, and the judgment should have been *respondeat ouster*, as in overruling any other plea in abatement. But it is insisted that this plea, although novel to English pleaders, is not on that, or on any other account *nul*. A capias ad respondendum in Mississippi, although familiarly termed "mesne process," performs to all intents, the functions of an original in England, and is a capias in name only, having no one feature of it. The party is not arrested on it, nor imprisoned by it, nor held to give pledges for his appearance. He is simply warned or summoned to appear. Yet it is admitted that this plea would lie for a variance of this nature between the original and declaration, (see Stephens on Pleading, 471,) until the establishment of the rule denying oyer of the original. Now this rule of practice of the King's Bench has never been adopted by our courts, and if it had been, it was the duty of the party demurring to assign *that* as a *special* cause of demurrer, which he has not done. If it be replied that the capias is a part of the record, and that therefore my client should have demurred instead of pleading to the variance, still I answer, that his failing to do so could be taken advantage of or objected to only by demurrer, *specially* pointing out and marking such a manner of pleading as improper, and that it cannot be reached by the demurrer which is plead in this case. But I go farther: I deny, that a capias is here or elsewhere a judicial record, or any part of it. It is true it issues from the court which is to pass judgment in the cause, but it is never copied into the issue book before it is sent to nisi prius for trial, nor does

Walker *et al. v.* Walker.

it ever appear on the postia after it is returned for judgment. There is a recital of it merely. It is insisted that a judicial record, containing such matters as the court must notice without being brought to its notice by plea, begins with the entry of the appearance of the parties, and ends with the judgment. And this accounts for the class of American decisions which the gentleman treats so lightly, declaring it to be unnecessary that oyer should be had of the capias, and that when had a variance between it and the declaration can be taken advantage of. See 2 Wash. 203; 2 Wexford, 297; 3 H. & M. 502; 4 H. & M. 309, 310; 4 Rand. 413; 2 Wheat. 45; 11 Wheat. p.      the case of Shirac *v.* Reineicker. From these authorities it seems the party claiming oyer would be permitted to *plead* the variance, instead of demurring "specially," which I will acknowledge appears *to me to be somewhat inconsistent* with the true philosophy of the science, but still it will not be denied, that if in such case it is the duty of the party asking oyer to demur, his failure to do so can be objected to by special demurrer *alone.*

Supposing this variance between the writ and declaration to be a tenable objection; in other words, supposing the analogy which I have attempted to trace between the original in England and the capias here to be true, and this identical position has been settled. Comyns Dig. Plead. p. 2; 2 Wilson, 85; 2 Salk. 658. By these cases the principle is settled, that if the defendant pleads a variance between the writ and the count without demanding oyer, that upon demurrer the judgment is that he shall answer over.

In conclusion I would remind the court that our own court has settled the law to be, that for a variance between the writ and declaration the defendant may at his option either demur or plead. See 1 How. p. 574. The judgment of the court should not have been for the demurrer in any form, but a judgment for the defendant that the writ be quashed. Mitford, 297; 3 H. & M. 502; 4 H. & M. 309, 310; 4 Rain. 413.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The plaintiff below, defendant in error, laid his damages in the writ at thirteen thousand dollars, and in the declaration at fourteen thousand dollars, for which variance the defendants below pleaded

in abatement.  The plaintiff demurred to the plea, and pending the demurrer obtained leave to amend by making the damages laid in the writ and declaration correspond; whereupon the demurrer was overruled, and judgment of *quod recuperit* was rendered, and this is assigned as error.  But the counsel on the other side insists that it was a correct judgment, because the plea. was a nullity, and the plaintiff might have treated it as such, and taken his judgment as for want of a plea.  In support of this position it is argued, that a variance between the *capias ad respondendum* and declaration never was pleadable in abatement, but only a variance between the original writ and declaration: that the capias being only process to bring the party into court, its functions are performed when he appears, and that no further notice can be taken of it.  Such, it is true, is the English practice, and since the *original* writ has been abolished by statute, pleas in abatement for a variance are no longer used.  Indeed, before the statute of Will. IV. the practice was virtually abolished by rule of court, by which oyer of the original writ was prohibited, and as it was not a part of the record, a variance could not be pleaded without craving oyer.  When the courts came to the determination not to grant oyer for this purpose, it was thereby placed out of the defendant's power to plead the variance in abatement.

Notwithstanding this rule of English practice, the office and character of the capias may be so widely different in this state, as still to justify the plea for a variance.  By instituting a comparison, we shall see how the capias in England differs from the capias here.  It is proper to remark, in the first place, that no court can legally proceed to judgment, unless it has jurisdiction over the person, as well as the subject matter.  Jurisdiction over the person does not attach, unless he be actually or constructively in court.  In England, the courts never did proceed, unless there was an appearance entered.  A judgment for want of appearance is there unknown.  The original is a command to the defendant to render what is claimed by the plaintiff, or to appear and show cause why he has not done so.  If the defendant fails to appear, a *capias ad respondendum* is issued, to compel his appearance.  In bailable actions, the sheriff, when he executes the process, takes bail for the defendant's appearance; and if he fails to appear, the bail bond is

assigned to the plaintiff, and he proceeds on that; or if the bail be insufficient, he may proceed against the sheriff. But the defendant not having appeared, the action cannot proceed. In non-bailable actions, if the defendant fails to appear, the plaintiff may enter an appearance for him, if the process has been served, and then the declaration may be filed and the action proceed. So essential is an appearance, either actual, or by putting in bail to the action, or by the entry of an appearance for the defendant, that the plaintiff cannot declare in chief until there be an appearance. It is then the appearance which gives the court jurisdiction, and the court having thus acquired jurisdiction, it may be plausibly said that the process, having performed its office, is *functus officio*. It is the mere means of accomplishing an end. Thus it may be seen why the process is no part of the record. It is unnecessary to consider it so for any purpose. It does not, without an appearance, give the court jurisdiction; and as it could answer no other purpose, it is not regarded at all in the record.

But it is different with the capias here. An actual appearance is not necessary. Our courts acquire jurisdiction by service of the process merely, without the appearance of the defendant, and as it must always appear from the record that the court had jurisdiction, the process constitutes a part of the record. If after service of process the defendant fails to appear, the plaintiff may take his judgment by default. By the service, the defendant is considered in court, and the court may proceed to judgment. When the defendant has appeared, perhaps there can be no good reason for considering the process a part of the record; but as it is essentially so considered where he has not appeared, it may with propriety, for the sake of uniformity, be so considered in all cases; and such has been the current of decisions in this state. If, then, it be a part of the record, it would seem to be a sufficient reason why the English practice should not prevail. A record must be harmonious in all its parts. Suppose the writ should be in trespass, and the declaration in assumpsit, could it be justly said that no advantage could be taken of this incongruity? Surely it could not. The record would present two distinct causes of action, which could not be joined together.

But there is this further reason which may be urged. The

process here is intended to give the defendant notice of the cause of action, and the plaintiff must make his action correspond with the notice given. The defendant is not bound to appear, and having received notice of an action which he could not gainsay, he either does not appear at all, or if he does, it is with a view to answer the action of which he had notice; and would it not be extremely unjust to allow the plaintiff to change his ground, by declaring for a different cause of action? The form of the action laid in the declaration must conform to the form laid in the process; and if it does not, the process being part of the record, it is on principle a cause of demurrer. A plea in abatement to the writ is recognized by statute. How. & Hutch. Digest, 657. And this fully shows that it is considered in a different light from what it is in England. We might add to this subject, if it were deemed necessary.

But we are not prepared to agree with the counsel, that no advantage can be taken of the process according to the English practice. It is true that, for the reasons before given, the plea in abatement cannot now be adopted, but the same effect is produced in a more summary way. If there be a variance between the writ and declaration, the proceedings will be set aside on motion, especially in bailable actions. 1 Tidd's Practice, 3d Am. edition, 446-7-8.

In a case reported in 1 Brod. & Bing. 529, a motion was made to quash the *capias ad respondendum*, because the christian names of the defendants were omitted, but the court held that the objection had been waived by giving a bail bond. From this we are led to infer that if there had not been a waiver, the objection would have been fatal. From this, too, it seems, that although the capias has performed its functions, it is still the subject of objection. We are thus forced to conclude, that it is at least by no means clear that a plea in abatement for a variance may be treated as a nullity.

There is an additional view of this question, which is justly entitled to consideration. The plaintiff did not treat the plea as a nullity, either by entering judgment of his own accord, or by moving the court for a judgment. He received it as a plea by demurring, and having done so, it is now too late for him to change

Walker *et al. v.* Walker.

his ground. The proper time to take such advantage is immediately after the expiration of the rule to plead. When the pleadings are made up, each party must abide by his pleading; or if he wish to change or amend them, he must have leave of the court for that purpose. The courts will generally allow a demurrer to a plea in abatement to be withdrawn, if the party wishes to reply; but if the demurrer is permitted to stand, the plea cannot afterwards be treated as a nullity. By replying to a plea which might have been treated as a nullity, the fault is cured. 1 Tidd, 464. With equal propriety may it be said, that by demurring, the party waives the privilege of treating the plea as a nullity, and treats it as a defective plea only. The court evidently did not regard the plea as a nullity, else why give leave to amend? No amendment is necessary where the defect is immaterial. For these reasons, we think the judgment should have been *respondeat ouster*, for which error it must be reversed, and cause remanded.